**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSE LUIS MENDEZ-GORDILLO, | Case No.: 2:26-cv-00579-APG-MDC |
| Petitioner | **Order Granting in Part Amended Petition for Writ of Habeas Corpus** |
| v. | [ECF No. 9] |
| TODD BLANCHE, et al.,[1] | |
| Respondents | |

Jose Luis Mendez-Gordillo is a noncitizen from Peru currently detained by Immigration and Customs Enforcement (ICE). ECF No. 10-1 at 2.  He entered the United States in December 2022 without inspection and was subsequently detained and issued humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 3-4; *See* ECF No. 18-1 at 2.  In December 2025, he was arrested for driving under the influence and detained by ICE. ECF No. 10-1 at 3.  In January 2026, an immigration judge (IJ) denied asylum and withholding of removal. ECF No. 10-4 at 2.  The IJ ordered Mendez-Gordillo removed to Peru or, in the alternative, Argentina. *Id.* at 4.  The appeal of that order is pending. ECF No. 10-5 at 2.

Mendez-Gordillo filed this amended petition for a writ of habeas corpus and argues that ICE did not properly revoke his parole, that he is detained under 8 U.S.C. § 1226(a), and that due process affords him release or a bond hearing at which the government bears the burden to justify detention.  The government responded that Mendez-Gordillo is ineligible for a bond hearing because he is under mandatory detention under 8 U.S.C. § 1225(b)(2), and because he did not exhaust his administrative remedies by waiting for the Board of Immigration Appeals

---

[1] Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem. Fed. R. Civ. P. 25(d).

(BIA) to rule on an appeal before filing his habeas corpus petition.  It also argues that Mendez-Gordillo is a class member under *Jacobo Ramirez*.[2]  I ordered supplemental briefs to determine the statutory or regulatory basis for Mendez-Gordillo's parole. ECF No. 15.

**I.     HABEAS CORPUS PETITION**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art I. § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 124 (2022) (quotation omitted).

**A.  Requiring Mendez-Gordillo to exhaust administrative remedies would be futile.**

The government argues the petition is not ripe.  But Mendez-Gordillo is suffering an injury in fact due to his current detention, and thus his petition is ripe under Article III. *Galvan v.*

---

[2] *Jacobo Ramirez v. Mullin*, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026).

*Hermosillo*, No. 2:25-cv-02349-TMC, 2025 WL 3484755, at *2 (W.D. Wash. Dec. 4, 2025) (finding the noncitizen detainee's habeas petition was ripe even though an Immigration Judge had not yet determined his eligibility for bond).

The government next cites *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), to argue that Mendez-Gordillo must exhaust his administrative remedies before filing a habeas petition. *Leonardo* held that a noncitizen in removal proceedings must appeal an IJ's adverse bond determination to the BIA before seeking habeas review, "unless exhaustion is excused." *Id.* at 1160. This is a prudential requirement, not a jurisdictional requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160. I "may waive the prudential exhaustion requirement" if the "pursuit of administrative remedies would be a futile gesture." *Hernandez*, 872 F.3d at 988 (9th Cir. 2017) (quotation omitted).

Mendez-Gordillo was not granted a bond hearing and therefore has no bond determination to appeal to the BIA. But even if there was a bond determination to appeal, it would be futile for Mendez-Gordillo to exhaust his administrative remedies because the BIA adopted the government's interpretation that § 1225(b)(2)(A) mandates detention of noncitizens like Mendez-Gordillo in *Matter of Hurtado*, 29 I. & N. Dec. at 229. *Hurtado* "serve[s] as precedent[] in all proceedings involving the same issue" before the BIA, so the BIA will decide it lacks jurisdiction to release him. 8 C.F.R. § 1003.1(g)(2); *Pacham v. Archambeault,* No. 3:25-cv-03163-GPC-DEB, 2025 WL 3653984, at *3 n.2 (S.D. Cal. Dec. 17, 2025) (noting that

3

*Hurtado* is a precedential decision of the BIA). "Where the [BIA's] position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." *Szonyi v. Barr*, 942 F.3d 874, 891 (9th Cir. 2019) (quotation omitted). Therefore, I waive the prudential exhaustion requirement and will consider Mendez-Gordillo's petition.

**B.  Mendez-Gordillo is not a member of the *Jacobo Ramirez* class.**

The government argued in its supplemental briefing that Mendez-Gordillo is a member of the *Jacobo Ramirez* class. The *Jacobo Ramirez* class is defined as

> [a]ll noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) *whom DHS alleges or will allege to have entered the United States without inspection or parole*; (4) who are not or will not be subject to detention under 8 U.S.C. § 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

*Jacobo Ramirez v. Mullin*, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026) (emphasis added). Despite a notice to appear that states Mendez-Gordillo was not admitted or paroled, the government recognizes that Mendez-Gordillo was in fact paroled under 8 U.S.C. § 1182 (d)(5)(A). ECF Nos. 10-2 at 2; 18-1 at 2; 20 at 4. Therefore, the third parameter is not met, and Mendez-Gordillo is not eligible for class membership.

**C.  ICE did not properly terminate Mendez-Gordillo's parole.**

Mendez-Gordillo received humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). The statute provides that parole may be terminated and the noncitizen returned to custody "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). The implementing regulations allow humanitarian parole to be terminated in two ways. First, under 8 C.F.R. § 212.5(e)(1), parole shall be automatically terminated if the noncitizen leaves the country or if the parole expires. Second, "upon

accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States," parole shall be terminated with written notice. 8 C.F.R. § 212.5(e)(2)(i); s*ee also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-45 (D. Or. 2025).  A "charging document will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i).  Although this regulation does not define what constitutes a charging document, other regulations define it to include a notice to appear. *See* 8 C.F.R. § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . For proceedings initiated after April 1, 1997, these documents include a Notice to Appear . . . ."); 8 C.F.R. § 244.1 (same).  I have previously found a notice to appear to qualify as a charging document. *See Diaz La Serna v. Blanche*, No. 2:26-cv-00238-APG-DJA, 2026 WL 1345597, at *2 (D. Nev. May 13, 2026).

Mendez-Gordillo argues that ICE violated the Administrative Procedure Act (APA) and Fifth Amendment due process because it did not follow 8 C.F.R. § 212.5(e)(2)(i) when it attempted to terminate his parole and return him to custody.  The government argues that it issued him a notice to appear when it took him into custody and that the notice is a charging document that constituted written notice to terminate his parole.

Under the APA, a court must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "without observance of procedure required by law."[3] 5 U.S.C. § 706(2).  ICE issued a notice to

---

[3] Because I agree with Mendez-Gordillo's argument under the APA, I do not address his due process argument.

appear when it detained Mendez-Gordillo in December 2025.  The notice shows a checked box beside text stating, "[y]ou are an alien present in the United States who has not been admitted or paroled." ECF No. 10-2 at 2.  Below the box, text states, "The Department of Homeland Security alleges that you. . . were not . . . admitted or paroled after inspection by an Immigration Officer." *Id.*  This runs contrary to the evidence that Mendez-Gordillo was paroled under 8 U.S.C. § 1182(d)(5)(A).  A notice to appear is a charging document, and it constitutes written notice of termination of humanitarian parole, "unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i).  Mendez-Gordillo's notice to appear specifies, albeit erroneously, that he was not paroled to begin with.  Therefore, it cannot act as written notice of the termination of a parole that it does not acknowledge exists.  Mendez-Gordillo did not then receive written notice that his parole was being terminated.[4]  As a result, ICE did not observe the procedure required by law under the APA to detain Mendez-Gordillo, and I grant his petition and order his release.  Accordingly, I do not reach the issue of which statute would have provided for Mendez-Gordillo's detention if his parole had been validly terminated.

**II.      CONCLUSION**

I THEREFORE ORDER that petitioner Jose Luis Mendez-Gordillo's petition for a writ of habeas corpus **(ECF No. 9) is GRANTED**.

I FURTHER ORDER respondent John Mattos to release Jose Luis Mendez-Gordillo from the custody of CoreCivic on Monday, June 15, 2026, no later than 1:00 pm.  The federal respondents must transport Mendez-Gordillo to 501 Las Vegas Blvd. South, Las Vegas, Nevada

---

[4] ICE also has not shown that the purpose of Mendez-Gordillo's parole has been accomplished, nor that an official listed in 8 C.F.R. § 212.5(a) has opined that neither humanitarian reasons nor public benefit warrants his continued presence in the United States. *See* 8 C.F.R. § 212.5(e)(2)(i). It therefore failed to meet its burden to show that it complied with the termination regulation on this basis as well. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167-68 (S.D. Cal. 2025).

by 4:00 p.m. that same day in a safe and orderly fashion. **The respondents must give Mendez-Gordillo's counsel at least three hours' notice of his release.** Jose Luis Mendez-Gordillo is being returned to his humanitarian parole subject to the conditions and privileges of that parole.

I FURTHER ORDER that the respondents are permanently enjoined from terminating Jose Luis Mendez-Gordillo's parole and returning him to custody unless they demonstrate that they have followed the procedures set forth in 8 C.F.R. § 212.5(e) to do so.

I FURTHER ORDER the clerk of the court to close this case.

DATED this 11th day of June, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE